## WHITTAKER v. SPENCER et al.

No. 7181.   Decided May 25, 1949.   (205 P. 2d 612.)
Rehearing Denied October 17, 1949.

See 67 C. J., Waters, sec. 1080; 58 Am. Jur., 214. Examination of witnesses as waiver of incompetency to testify as to transactions of decedent, note, 159 A. L. R. 411.

*Dilworth Woolley,* Manti, and *J. Vernon Erickson,* Richfield, for respondent-plaintiff.

*Elias Hansen,* Salt Lake City, for appellants and respondents on cross-appeal.

*Allen G. Thurman,* Salt Lake City (deceased), for respondent and cross-appellant.

*John McAllister,* Mt. Pleasant, for respondents J. Vord Spencer, Irwin M. Price, and Simon Hugentobler.

*Jensen & Jensen,* Ephraim, for respondent Indianola Irrigation Co.

*Grover A. Giles,* Atty. Gen., for the State.

PRATT, Chief Justice.

This suit was initiated by James C. Whittaker to quiet title to 60 acres (or shares) of class "A" primary water rights in a creek known as Thistle Creek, and its tributaries; and to enjoin interference with the use of that right. The use of "acres" and "shares" in the alternative, above, is due to facts that will appear as we proceed.

The facts and pleadings of this case are numerous and confusing, resulting in the dispute covering more than the difficulty over the 60 acres of water mentioned above. The expanded issues came into the picture by means of cross complaints and counterclaims, bringing into controversy some 448 acres of water rights owned by defendant Richard H. Spencer, who originally owned the 60 acres of water now claimed by plaintiff Whittaker, and of which 448 acres the 60 acres is alleged to be a part. This defendant died during the proceedings and his estate was substituted as

defendant, the administrator being Richard Leo Spencer. We shall refer to his interests however, merely as the Richard H. Spencer interests.

The Indianola Irrigation Company was organized in June 1918, for the purpose of controlling and distributing the waters of the Creek and its tributaries to its stockholders, according to their several rights. It was contemplated that the various users would convey their rights to the Company, and take shares, one share for each acre of use, makin 1728 shares of Class "A" or primary rights, and 490 shares of Class "B" or secondary rights, being the total of rights upon the creek and its tributaries. The distinction between the rights was that the primary right was an all year right, while the secondary right was a high water right which was used in the Spring of the year—approximately March 1, to June 15.

Not all water users immediately conveyed their rights to the Company, although the company controlled and managed their distribution and use as if they actually had shares therein. One of these users who did not make an immediate conveyance was Richard H. Spencer, who was decreed in action 1406 hereinafter discussed, as, at least, being entitled to 448 shares of Class "A" or primary rights if and when he did make his conveyance. The Company was organized on a basis of 1800 primary shares (Class "A") ; the difference between the 1728 shares of Class "A" actually covered by subscription or anticipated subscription (such as Richard H. Spencer's) and the 1800 shares Class "A" authorized was considered by some as unissued or treasury stock. However, there was no extra water to cover these shares. Whether this was a proper designation or not is immaterial to this case.

Generally in the use of the water rights on the creek the appurtenancy to any particular piece of land, if any were so appurtenant, was not considered of importance, but the rights were shifted from land to land as desired, and

needed—sometimes on a rental basis. None of the conveyances within the Company indicated appurtenancy, but some of the inter-family conveyances did. In the present case the trial court ruled that none of the water was appurtenant.

On May 6, 1920, the Seventh Judicial District Court of this State adjudicated the interests of some of the present litigants, including the Indianola Irrigation Company, and Richard H. Spencer as we have set them out above. This case was number 1406. There were prior adjudications, but there is no need of going back of case No. 1406 to lay the foundation for the present controversy.

In chronological order there are four series of transactions dealing with land and water involved in this case, the third of which is the foundation for the claim of plaintiff Whittaker:

(1) January 3, 1922, Richard H. Spencer mortgaged to Simon Hugentobler the land known as the Ponowitz land. The mortgage included 55 acres of Class "A" water. It was recorded January 12, 1922. There were more acres of land under the mortgage than there were acres of water. However, it appears that Richard H. Spencer owned more acres of land than the 448 acres of water allotted to him in proceeding No. 1406. This mortgage was never paid and was foreclosed in Civil Action No. 2888, in 1937. Hugentobler bought the land and water at the foreclosure sale. Subsequently by mesne conveyances Que Jensen became the owner of these 55 acres of Class "A" water and was substituted for Hugentobler as one of the defendants in the present case number 3584. These 55 acres of water are the basis of the Hugentobler (Que Jensen) counterclaim and cross complaint in this proceeding. The controversy develops over the fact that some of the Spencers insist upon using the full 448 acres of water originally decreed to, and owned by Richard H. Spencer, and of which these 55 acres are alleged to be a part.

(2) November 9, 1926, Richard H. Spencer and Annie Spencer, his wife; J. Vord Spencer and Josie Spencer, his wife; H. M. Spencer and Ida Spencer, his wife—all mortgaged to the Federal Building and Loan Association the land known as the Wapits land and the Onump land together with 285 shares of the Class "A" capital stock of the Indianola Irrigation Company. The mortgage was recorded the same day. At this time, however, Richard H. Spencer had not conveyed any water rights to the Indianola Irrigation Company; but as part of this transaction Richard executed an assignment of 223 shares of the capital stock of the Irrigation Company to the Federal Building and Loan Association, speaking of the stock as not yet issued but authorizing its issue to the Association. There were some 234 acres of land involved in this mortgage.

This mortgage was not paid off and on November 15, 1934, in case No. 2730, it was foreclosed. The Federal Building and Loan Association bought in the property, deeded the water rights to the Indianola Irrigation Company, and was issued on March 2, 1935, certificate No. 81 for 285 shares of stock in that Company. Subsequently, on September 25, 1935, this certificate was surrendered and two certificates issued in lieu thereof—No. 83 for 160 shares and No. 84 for 125 shares. This dividing of certificate No. 81 into certificates 83 and 84 was done in the interest of Richard H. Spencer. Through the efforts of the Federal Building and Loan Association in conjunction with Richard H. Spencer and his son-in-law, Robert D. Tibbs, certificate No. 83 was surrendered to the Irrigation Company, having been indorsed to Robert D. Tibbs, and the Irrigation Company issued to the Federal Land Bank of Berkley, as pledgee of Robert D. Tibbs, certificate No. 86 for 160 shares. This latter certificate is dated February 20, 1936. John Edison Spencer, a son of Richard H. Spencer, and a defendant herein claims the certificate No. 86 by assignment from his father, for which he agreed to assume the indebtedness that the Tibbs transaction secured. John Edison Spencer

paid the balance in full, and the Tibbs obligations were released, and certificate No. 86 was returned to John Edison Spencer. The release is dated January 16, 1947.

Certificate No. 84 for 125 shares of this water was surrendered to Richard H. Spencer by the Federal Building and Loan Association when the loan with that company was satisfied. This was about December 1, 1938. After Richard's death, this certificate, which was in John Edison Spencer's hands, was submitted to the Indianola Irrigation Company for transfer to his name, but that company refused to make the transfer. He also approached the Federal Building and Loan Association, and was informed by them that they could do nothing, and advised him that he should notify the administrator of his father's estate, and turn the certificate over to him.

(3) On October 16, 1931, H. M. Spencer and wife, Lee Harold Spencer and wife, and Richard H. Spencer and Richard Leo Spencer and wife, all joined in a mortgage to the State Bank Commissioner. This mortgage was recorded October 21, 1931, and covered property in Section 3, Township 12 South, Range 4 East. The mortgage included this paragraph:

"Together with all rights of every kind and nature, however evidenced, to the use of water, ditches and canals for the irrigation of said premises to which the mortgagors of said premises are now or may hereafter become entitled; whether represented by certificates of stock or otherwise, *and together with sixty (60) shares or acres of water right owned by Richard H. Spencer in the waters of Indianola Creek, Thistle Creek and Rock Creeks in addition to waters now used for the irrigation of the above described lands.*" (Italics added.)

This mortgage was foreclosed in 1937, and the Bank Commissioner received a deed to the property in December, 1937. The foreclosure suit was No. 2888—the same that foreclosed the Hugentobler mortgage. The 60 shares or acres of water were of Class "A" rights on the Creek. Plaintiff Whittaker purchased the assets held by the Bank Commissioner, including these rights. John Edison Spencer and

Elizabeth A. Tibbs, his sister, claim that, due to the lack of identification of this water, the Bank Commissioner and plaintiff Whittaker got nothing. However, case No. 2888 seems to identify the particular water sufficiently.

(4) The last series of transactions involved in this case was that of November 25, 1931. Richard H. Spencer transferred to the Indianola Irrigation Company 160 acres of water rights and had certificate No. 57 for that number of shares issued to the State of Utah. The conveyance warranted against encumbrances. The contention is advanced that this conveyance actually occurred in 1918, however, the evidence clearly establishes it as being November 25, 1931. The loan by the State to Richard H. Spencer did not materialize and that certificate was returned to Richard H. Spencer. In December, 1933, this certificate was surrendered to the Irrigation Company and two certificates, No. 72 and No. 73, of 80 shares each were taken in lieu thereof. Certificate No. 72 was issued to the Federal Land Bank as pledgee of Richard H. Spencer; and certificate No. 73 was issued to that Bank as pledgee of John Edison Spencer. A deed was put in evidence showing a conveyance of land and 80 acres of water to John Edison Spencer, from Richard H. Spencer. The reason for the division as testified to by John Edison Spencer, was, to facilitate the securing of a loan, as two small loans, which they were advised would be easier than securing one large loan. This loan was not completed, and as Richard and his wife had mortgaged property to one Irwin M. Price, when the certificates came back to Richard H. Spencer, he either delivered them to Price as part of the security on the mortgage, or else as security for a $600.00 loan. Mr. Price is a son-in-law of Richard H. Spencer. He disclaims any interest in this case, or the water or land, and has filed such a disclaimer indicating that any indebtedness owed him by Richard H. Spencer has long since been fully satisfied. Thus, we need not concern ourselves with the reason for the transfer to Price. It was from these 160 shares

of water that the court in case No. 2888 decreed that Que Jensen and Whittaker should get their water.

To summarize the foundation of the case:

### MORTGAGES AND TRANSFERS

1. May 1920: Decree #1406—R. H. Spencer interest in Creek ............. 448 acres Class "A"
2. January 1922: Mortgage, R. H. Spencer to Hugentobler ............... 55 " " "

   R. H. Spencer unencumbered balance ................... 393 " " "
3. November 1926: Mortgage R. H. Spencer to Fed. Bldg. Loan .......... 285 " " "

   (question: Was it 285 shares or 223 shares?)
   R. H. Spencer unencumbered balance ................ 108 " " "
4. October 1931: Mortgage R. H. Spencer to Bank Commissioner ........ 60 " " "

   R. H. Spencer unencumbered balance ................... 48 " " "
5. November 1931: Transfer R. H. Spencer to Irrigation Co. ............ 160 " " "

   More than R. H. Spencer had unencumbered ....... 112 " " "
   by

### Foreclosures

6. November 1934: Foreclosure sale Case #2730 to Fed. Bldg. Loan, item 3 above ................... 285 Shares Class "A"
7. December 1936: Foreclosure sale Case #2888 to Hugentobler, item 2 above 55 " " "
8. December 1936: Foreclosure sale Case #2888 to Bank Commissioner, item 4 above ................. 60 " " "

Items 3 and 6 above are one foundation for the Spencer family controversy; items 2 and 7 are the foundation of the issues between Que Jensen and the Spencers; and items

4 and 8 are the foundation of the issues between plaintiff Whittaker and the Spencers. The Indianola Irrigation Company is in the picture due to a controversy over item 3 above as to whether or not they had issued too many shares of water rights as belonging to Richard H. Spencer in issuing certificate No. 81 for 285 shares. John Edison Spencer and Elizabeth A. Tibbs, Appellants, claim among other errors, that the lower court should not have charged items 2 and 4 against item 5, as we have previously indicated. There is a dispute between the Spencers as to item 5, the issue being as to ownership of the 160 shares.

It is obvious that these transactions deal with more than the 448 shares of water allotted to Richard H. Spencer. There are three acres of uncertificated water which also go to make up the original 448 owned by Richard H. Spencer, which water apparently was used on a city lot, and the total is 115 more shares than Richard H. Spencer owned. These three acres were awarded to John Edison Spencer by the lower court in this action. This award is assigned as error, but it is not argued by the cross-appellant in his brief, and need not be further considered.

The lower court in the present case, No. 3584, decided as follows:

He awarded: (1) 55/1728ths of the flow of Thistle Creek and its tributaries to Que Jensen (items 2 and 7 of summary); (2) Certificate No. 84, 125 Shares to the Richard H. Spencer estate and Certificate No. 86, 160 shares, to John Edison Spencer (items 3 and 7 of summary); (3) 60/1728ths of the flow of Thistle Creek and its tributaries to Whittaker (items 4 and 8 of summary); and (4) out of the total of 160 shares represented by Certificates 72 and 73, the 55/1728ths of Que Jensen and the 60/1728ths of Whittaker were deducted (item 5 of summary). The balance went to Richard H. Spencer estate. We have previously indicated the disposition of the other three acres of water which were uncertificated, making the total 448. Appar-

ently the court used 1728ths in describing the interests of Jensen and Whittaker as their interests were believed to have never been assigned to the Irrigation Company and shares therefor issued, unless as improperly included in Certificate No. 57 (72 and 73).

As previously indicated, John Edison Spencer and Elizabeth A. Tibbs, a son and daughter of Richard H. Spencer, are the appellants. A cross-appeal was taken by the administrator of the Richard H. Spencer estate. Fifty errors were assigned by the son and daughter; and seventeen errors were assigned by the administrator. In the interests of brevity we shall make no effort to discuss them singly, but will limit our discussion to matters covered by the briefs without headings.

Let us first consider what the lower court meant when he referred to 1728ths of the flow of Thistle Creek, in measuring the interests he awarded plaintiff Whittaker and defendant Que Jensen—the former being allowed 60/1728ths and the latter 55/1728ths. The case is initiated upon a complaint which includes the decree in the proceeding No. 1406, wherein the interests in Thistle Creek are listed as 1728 shares of Class "A" water rights and 490 shares of Class "B" rights. The Indianola Irrigation Company is organized on the basis of a distinction between the two rights; and the court holds in case No. 1406, that the total rights on the streams are 1728 Class "A" and 490 Class "B." The 448 shares or acres owned by Richard H. Spencer were shares or acres of primary rights; and the Que Jensen and Whittaker rights are derived through mesne conveyances and process from those 448 shares. There is nothing in the numerous pleadings filed that indicates that the controversies over the shares of water rights have reference to anything but primary rights. It seems obvious that the lower court in its adjudication was deciding primary rights, and that 55 shares and 60 shares of primary rights (class "A" rights)

are contemplated by the 55/1728ths and 60/1728ths respectively. We so hold.

Appellants contend that plaintiff Whittaker and his predecessors in interest did not acquire any title to the 60 shares or acres claimed by him because they were insufficiently described or identified. Appellants in this proceeding were defendants in case No. 2888, wherein a foreclosure decree covering these 60 shares or acres was entered. In addition to appellants as defendants in that case, there was included the Indianola Irrigation Company. That company in its cross complaint and counterclaim set out the facts that are included in the present case as having occurred prior to that foreclosure suit, including the mortgage of the 60 acres of class "A" water right in question. In that proceeding the parties were required to set out the nature of their respective claims. Appellants as defendants in that case, No. 2888, defaulted as to this requirement and the court determined the issues adversely to them. Such interest as they had, they acquired by conveyances from their father Richard H. Spencer, which conveyances were decided by that proceeding as inferior to the interest of the mortgagee, the predecessor in interest of plaintiff Whittaker in the present case. That decree has never been set aside. Appellants contend however, that the decree is void and of no effect. If it is void as contended, then that must show upon its face, as we cannot in effect set that decree aside by a redetermination of its merits. The decree, however, is based upon findings that the 60 acres of water were part of the 160 conveyed by Richard H. Spencer and his wife to the Indianola Irrigation Company and for which certificate No. 57 of that corporation was issued (item 5 of the summary). That is a factual identification of the 60 shares that would have to be held for naught to conclude that the decree was void on its face. Such a holding is not justified when the decree is attacked merely collaterally. Certificate No. 57 was subsequently divided into certificates No. 72 and 73. Appellants lay

claim to those certificates of water, yet they too are founded upon a conveyance of uncertificated 160 shares of water conveyed by Richard H. Spencer to the Indianola Irrigation Company. Those shares were not more specifically identified than were the 60 shares in question. Appellants must fail on their objection as to the 60 shares of the plaintiff Whittaker being considered part of the 160 shares conveyed by Richard H. Spencer to the Irrigation Company.

For all practical purposes, it is conceded by all parties concerned that Que Jensen is entitled to 55 shares or acres of primary rights. The only question which arises as to him, is that of determining from which stock certificate his shares are to be deducted. This matter, however, was determined in Case No. 2888 along with Whittaker's rights, and what has been said as to Whittaker's rights applies equally to those of Que Jensen.

It is the contention of the administrator of Richard H. Spencer's estate that the 285 shares of stock issued to the Federal Building and Loan Association (item 3 and 6 of the summary above) was an over issue of stock. He calls to our attention the assignment issued by Richard at the time indicating that only 223 shares were intended. Appellants also take the position that only 223 shares of water owned by Richard H. Spencer were included in the issue of the 285 shares of stock. There is another matter, however, that should be considered. When the certificate covering these shares was broken down into certificates 83 and 84 for 160 and 125 shares respectively, they were treated by Richard as his property. From this the lower court was justified in concluding that the 285 shares were those of Richard H. Spencer.

This leaves for discussion the controversies between the Spencer family members over the balance of certificates 72 and 73, and certificates 84 and 86.

The lower court determined that the water in controversy was not appurtenant to any land (except as to the 3 un-

certificated rights previously considered). The evidence indicates that the water in that area is, and for many years has been, shifted from one tract of land to another so far as use is concerned, depending upon the need for it at any particular place. It is apparent from the testimony in the case that all an owner or user had to do in order to change his point of diversion and place of use, was to notify the water master that he desired to use the water at a different point, and the water master would ticket it to him at that point, fitting his use in with other users in that locality. There is evidence that Richard H. Spencer shifted his water from tract to tract also, although John Edison Spencer declined to say that any of the 448 shares had actually been transferred from one tract to another, when examined on that subject. In addition, it appears that the water rights claimed by Whittaker and Jensen, were used on the land retained by the Spencers.

The trial court could reasonably conclude from all the evidence that all the water had been made available to all the land without regard to the amount of water originally allocated to any particular acreage of land, and that the water represented by certificates Nos. 72, 73, 84 and 86 were not appurtenant to any land.

Most of the claims of John Edison Spencer and Elizabeth A. Tibbs to the stock certificates, arise by virtue of events which transpired on May 31, 1946, and for that reason, we set out the evidence on this point. It appeared that Richard H. Spencer had been ill for some time, getting progressively worse. On May 31, 1946, according to Robert D. Tibbs, husband of Elizabeth A. Tibbs, and Louise Spencer, wife of John Edison Spencer, he, Richard H. Spencer called the four of them together, and told them, or some of them to go to Manti and get certain deeds from a Mr. Beals. In evidence is a writing signed by Richard H. Spencer, authorizing Beals to turn the deeds over to these people. They secured the deeds from Beals and returned to the home of Richard H. Spencer with them. Richard

H. Spencer then, according to their testimony, divided the deeds into two piles, one pile of which he handed to John Edison Spencer, the other he handed to Elizabeth A. Tibbs, with instructions to record them, which they did the following day. Having ruled that the water involved was not appurtenant, we are not concerned further with the deeds. Elizabeth A. Tibbs who bases one of her claims to water represented by Certificate No. 72 upon its appurtenancy to land conveyed her by one of these deeds, gained no water by virtue of the conveyance of the land to her.

John Edison Spencer also claimed water (Certificate No. 84) by virtue of its appurtenancy to certain land conveyed to him on this date, and the same ruling applies to his claim. He claims Certificate No. 84 also by virtue of an oral assignment and delivery of the certificate to him on that date. John Edison Spencer testified that it was handed over to him by his father along with the deeds which were given him.

Also testifying as to the assignment is his wife Louise Spencer, who indicated that the transaction had taken place on that day—May 31, 1946. Testimony which she had given in an earlier proceeding to appoint an administrator was introduced by way of impeachment wherein she outlined the transactions of May 31, 1946, and made no mention of the delivery to John Edison Spencer of Certificate No. 84. In that proceeding she testified to the delivery of the deeds and also that there were no other papers delivered. John Edison Spencer contends that she was referring specifically to the papers in the envelope which had been brought from Mr. Beals' office, and that this explained her answer. It is true that specific inquiries had been directed to the contents of the envelope, but it would seem from a reading of the entire examination that the question to which she responded that there were no other papers delivered, related to the entire transactions of that day. To strengthen his argument John Edison Spencer argues that his wife also failed to mention an assignment

of an earmark or brand from Richard H. Spencer to him, which assignment was dated the same day. In the lower court however both John Edison Spencer and Louise Spencer established the date of assignment of this earmark or brand as being the following day (June 1, 1946).

Elizabeth A. Tibbs and Robert D. Tibbs were both present at the time of the delivery of the deeds, and testified to the transactions of that day, yet neither in detailing the conversations, events and transactions of that day, made any reference to anything connected with the assignment of certificate No. 84.

On the other hand we have these factors: John Edison Spencer had access to the safe in which all his father's papers were kept; in fact, he kept some of his own papers therein; he apparently opened the safe alone, after the death of Richard H. Spencer, and could open it ■ at any time he desired, both before and after the death of Richard H. Spencer. Richard H. Spencer had dealt with water stock prior to this time, and had made assignments thereof, and knew the approved way of so doing; Richard H. Spencer on the day in question had signed a request addressed to Mr. Beals to hand the deeds over to John Edison Spencer and Robert D. Tibbs, and either that day or the day following, signed the assignment of earmark or brand to John Edison Spencer, so we are not justified in concluding that he was unable to make a written assignment. Finally, just a few days earlier, May 14, 1946, he had assigned Certificate No. 86 to John Edison Spencer by a written assignment. Under these facts the trial court concluded that Richard H. Spencer had not made any assignment to John Edison Spencer, and we conclude that he could properly so find.

John Edison Spencer claimed stock Certificate No. 73 by virtue of a conveyance to him by his father on September 16, 1933, wherein certain land was conveyed to him together with certificate No. 73. By his own testi-

mony however, he indicated the reason for the division of certificate 57 into certificates 72 and 73 was to facilitate his father's securing a loan from the Federal Land Bank. Richard H. Spencer continued to treat these certificates as his own, including the pledging of them to Irwin M. Price, to secure an indebtedness.

The other claims on the part of Elizabeth A. Tibbs and John Edison Spencer to certificates 72 and 73 arise by virtue of an alleged oral contract between Irwin M. Price and John Edison Spencer. Under this theory, it was made to appear that Irwin M. Price was owner of the land and the water certificates by reason of a mortgage foreclosure proceeding instituted by Price against Richard H. Spencer and his wife under a mortgage given by them to him, and an order of sale of certain realty and water appurtenant thereto. Added to this order of sale were certificates 72 and 73.

The alleged oral contract was to the effect that John Edison Spencer was to have certificates 72 and 73 if he could clear them in this litigation, provided he paid for all the expense of litigation, gave certificate No. 72 to Elizabeth A. Tibbs after it was cleared, and paid ■ to Price's daughter, (a minor who lived with another of Richard H. Spencer's daughters) the sum of one thousand dollars. Although parol, this contract was admitted into evidence over objection. It would appear that since John Edison Spencer and Elizabeth A. Tibbs both claim the same water rights under another theory, that they would be fighting this action even though no such contract with Price existed, and thus the fact of seeking to establish their claims in a court of law is an equivocal act and not necessarily indictive of any performance of an oral contract. At any rate, such a contract would clearly be for the benefit of Price, and he has disclaimed any interest whatever in the water certificates as of 1941, some years before the death of Richard H. Spencer. There are in evidence two documents signed by Price which definitely

establish that he has no claims whatsoever to the water in controversy. Under these circumstances, we conclude along with the trial court that no oral contract existed.

We come now to consider cross-appellant's assignments of error relating to Certificate No. 86 which the lower court awarded to John Edison Spencer. This certificate was assigned by Richard H. Spencer to John Edison Spencer on May 14, 1946. The evidence indicates that John Edison Spencer did actually pay off the mortgage outstanding against certificate No. 86, and the land subject to the same mortgage. The deed to this land was one of those which were purportedly delivered by Richard H. Spencer on May 31, 1946. The validity or invalidity of this deed need not concern us.

The argument of the cross-appellant is that the only evidence of the assignment that was introduced was testimony by John Edison Spencer which testimony was violative of the "Dead Man Statute," Section 104-49-2, U. C. A. 1943, and that this testimony should have been excluded, and that without it there was no foundation for the introduction into evidence of the assignment as an exhibit. Timely objections were interposed by the cross-appellant. The waiver if there was one consisted of introduction into evidence of a part of the testimony of John Edison Spencer at a previous proceeding (the appointment of an administrator) in which he discussed the whole 448 shares of water and indicated the disposition of each division. He indicated that 160 shares were in the hands of Irwin M. Price and the balance in the hands of the Federal Building and Loan Association, and the Federal Land Bank of Berkley, and that he had none in his name. This testimony from the previous case was introduced as an admission against interest in the present case. No reference was made specifically as to this particular transaction, but only generally as to ownership of various divisions of the stock, and where title stood. The inquiry in that case was for the purpose of fixing the administra-

tor's bond. The testimony introduced clearly contradicts any present claim by John Edison Spencer, of ownership of certificate 86, and opens to him the opportunity to explain the prior testimony, and what he meant by it. The mortgage held by the Federal Land Bank of Berkley (the subject of an "Assumption Agreement" of May 14, 1946) was paid off by John Edison Spencer some six months after the death of Richard H. Spencer, who died June 4, 1946. The proceedings for appointment of administrator were heard commencing November 25, 1946. Thus, the proceedings to appoint administrator occurred before John Edison Spencer had received the release from the Federal Land Bank of Berkley of certificate No. 86. This release bears the date of January 16, 1947. It appears then that his explanation and the introduction of these papers was proper to reconcile his testimony of the former proceedings and to explain it. See annotation 64 A. L. R. 1182, and 107 A. L. R. 496 for the rule that introduction of testimony in former proceedings between same parties renders such witness competent. A foundation thus having been established for the admission of the assignment of certificate No. 86 into evidence, it could be used by John Edison Spencer to sustain his claim to that certificate. Without considering further the "Assumption Agreement" and the deed, it appears from the evidence and the assignment, that John Edison Spencer is the rightful owner of certificate No. 86.

It is contended by the cross-appellant however, that Richard H. Spencer could make no transfer of his water rights for the reason that he along with the other family members was enjoined from doing so by an injunction arising out of the proceedings in Case No. 2888. This injunction however appears to have been for the protection of Whittaker and Que Jensen, and does not preclude the Spencer family members from conveying among themselves. Nor does it appear that the administrator can take advantage of the prohibition of the injunction

in the face of the fact that it was the decedent who made the transfer to John Edison Spencer, and the administrator cannot now be heard to say that he can rely on that injunction, when if it applied to this set of facts, the decedent has ignored it.

The appellants assign as error the award of costs in the lower court in favor of respondent Whittaker, and respondent Indianola Irrigation Co., solely against the appellants, rather than against the respondent and cross-appellant, Richard Leo Spencer as administrator. We conclude that since Whittaker and the Indianola Irrigation Company prevailed over both the appellants and the cross-appellant, and both these parties were at fault, that these costs should have been apportioned against the appellants and cross-appellants as losing parties.

There are certain other errors of a non-prejudicial nature which have been assigned as error, which we do not discuss.

The judgment of the lower court is affirmed, except as to the matter of award of costs in the court below. As to this matter the case is remanded for modification as indicated.

Respondents Whittaker, Jensen and Richard Leo Spencer, as administrator, are awarded their costs on appeal as against the appellants John Edison Spencer and Elizabeth A. Tibbs. Respondent Indianola Irrigation Company is awarded its costs against the appellants John Edison Spencer and Elizabeth A. Tibbs, and cross-appellant, Richard Leo Spencer, Administrator, Respondents on cross-appeal Jensen, and John Edison Spencer and Elizabeth A. Tibbs, are awarded costs against cross-appellant.

WADE, WOLFE, and McDONOUGH, JJ., concur.

LATIMER, J., not participating.